```
1            IN THE UNITED STATES DISTRICT COURT

2                FOR THE EASTERN DISTRICT

3                   NORTHERN DIVISION

4

5

6       UNITED STATES OF AMERICA,    )

7                                    )

8                Plaintiff,          )

9                                    )  Docket No. 3:07-cr-42

10          vs.                      )  Knoxville, Tennessee

11                                   )  April 30, 2009

12      TOBY TOBIAS SENTER,          )  1:00 p.m.

13                                   )

14               Defendant.          )

15

16

17           TRANSCRIPT OF SENTENCING HEARING

18        BEFORE THE HONORABLE THOMAS W. PHILLIPS

19             UNITED STATES DISTRICT JUDGE

20

21

22      APPEARANCES:

23      For the Plaintiff:      DAVID JENNINGS, ESQ.

24      For the Defendant:      BRUCE POSTON, ESQ.

25

26

27

28

29      _____

30            LYNDA CLARK, CCR, RMR, CRR

31          MILLER & MILLER COURT REPORTERS

32        12804 Union Road, Knoxville, Tennessee

33        Phone: (865) 675-1471 / FAX: (865) 675-6398
```

1                              INDEX

2       WITNESSES                                      PAGE

3       BLENDA BANNER

4               Direct Examination by Mr. Jennings       9

5               Cross-Examination by Mr. Poston         17

6               Redirect Examination by Mr. Jennings    19

7

8       GREG MONROE

9               Direct Examination by Mr. Jennings      21

10

11

12

13                            EXHIBITS

14      NO.     DESCRIPTION                            PAGE

15      1,      Collective (Prior Convictions)          17

16

17

18

19

20

21

22

23

24

25

26

27      (Note:  Unless otherwise provided to the court

28      reporter, all spellings are to the best phonetic

29      approximation.)

1          This cause came on for hearing on the 30th

2     day of April, 2009, in the United States District Court

3     for the Eastern District of Tennessee, Northern

4     Division, before the Honorable Thomas W. Phillips,

5     presiding.

6          The Court having been duly opened, the

7     following proceedings were had, to-wit:

8          THE COURTROOM DEPUTY:  The United States

9     District Court for the Eastern District of Tennessee is

10    now open pursuant to adjournment with the Honorable

11    Thomas W. Phillips presiding.

12         Please, come to order and be seated.

13         THE COURT:  Good afternoon, ladies and

14    gentlemen.

15         MR. JENNINGS:  Good afternoon, Your Honor.

16         MR. POSTON:  Good afternoon, Your Honor.

17         THE COURT:  Madam clerk, if you will call the

18    next case for us, please.

19         THE COURTROOM DEPUTY:  Yes, Your Honor.  We

20    are here on a sentencing hearing in case 3:07-cr-42,

21    United States versus Toby Tobias Senter.

22         Here on behalf of the government is David

23    Jennings.

24         Is the government ready to proceed?

25         MR. JENNINGS:  The government is present and

1    ready.

2              THE COURT:  Here on behalf of the defendant

3    is Bruce Poston.

4              Is the defendant ready to proceed?

5              MR. POSTON:  We're here and ready to go

6    forward, Your Honor.

7              THE COURT:  Okay.  Mr. Senter, this is your

8    sentencing hearing that's being held pursuant to Rule

9    32 of the Federal Rules of Criminal Procedure.

10              If you would please stand and raise your

11    right hand for me.

12              THE COURTROOM DEPUTY:  Do you solemnly swear

13    or affirm that you will truthfully answer all questions

14    asked of you at this time as you shall answer under

15    God?  If so, please say "I do".

16              THE DEFENDANT:  I do.

17              THE COURTROOM DEPUTY:  Thank you.  You may be

18    seated.

19              THE COURT:  Mr. Senter, would you please

20    state and spell for the record your full name.

21              THE WITNESS:  Toby Tobias Senter, T-o-b-y,

22    T-o-b-i-a-s, S-e-n-t-e-r.

23              THE COURT:  Okay.  And how old are you,

24    Mr. Senter?

25              THE DEFENDANT:  Thirty-two.

1          THE COURT:  How far did you go in school?

2          THE DEFENDANT:  I got my GED, Your Honor.

3          THE COURT:  So I take it you have no

4    difficulty reading or writing.  Is that correct, sir?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Okay.  Now, Mr. Senter, on June

7    the 5th, 2008, a jury found you guilty of the sole

8    count of the Indictment, charging a violation of 21

9    United States Code, Sections 846 and 841(a)(1),

10   Conspiracy to Distribute and Possess with Intent to

11   Distribute Five Kilograms or More of Cocaine

12   Hydrochloride.

13          The punishment which may be imposed as a

14   result of your conviction is a mandatory term of life

15   imprisonment and an eight-million-dollar fine.  There

16   is also a Special Assessment Fee of $100, which must be

17   paid in this case as to Count I.

18          Mr. Senter, you have been represented in this

19   case by your counsel, Mr. Bruce Poston.

20          Do you want Mr. Poston to represent you for

21   purposes of your sentencing hearing here this

22   afternoon?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And, Mr. Poston, are you willing

25   to continue to represent Mr. Senter for purposes of

1          this sentencing hearing?

2                    MR. POSTON:  I am, Your Honor.

3                    THE COURT:  Thank you, Mr. Poston.

4                    Now, Mr. Senter, a Presentence Investigation

5          Report has been prepared in this case.  Have you

6          received a copy of the Presentence Investigation

7          Report?

8                    THE DEFENDANT:  Yes, Your Honor.

9                    THE COURT:  Have you had enough time to go

10         over the report with your counsel, Mr. Poston?

11                   THE DEFENDANT:  Yes, sir.

12                   THE COURT:  Mr. Poston, have you received a

13         copy of the Presentence Investigation Report?

14                   MR. POSTON:  We have, Your Honor.

15                   THE COURT:  Okay.  And I understand that you

16         have filed objections to the Presentence Investigation

17         Report, which we will address in just a moment.

18                   MR. POSTON:  Yes, Your Honor.

19                   THE COURT:  And, Mr. Jennings, have you

20         received a copy -- has the government received a copy

21         of the Presentence Investigation Report?

22                   MR. JENNINGS:  I have, and I have no

23         objections to it.

24                   THE COURT:  Thank you, Mr. Jennings.

25                   Now, we will need to take up the objections

1    that Mr. Poston has filed to the Presentence

2    Investigation Report.  And the first is an objection to

3    the defendant's criminal history.

4            The government has filed a Notice of

5    Enhancement, listing four individual convictions for

6    the purposes of enhancing the defendant's sentence

7    under 21 United States Code, Section 841(b)(1)(a).

8            The first one is on November the 8th, 1995,

9    in the Criminal Court for Hamblen County, Tennessee,

10   docket number 95-cr-198; Count I, Sale of More Than One

11   Half Gram of Cocaine Base; Count II, Sale of Less Than

12   One Half Gram Cocaine Base; and Count III, Sale of More

13   Than One Half Gram Cocaine Base.

14           Now, those offenses were on different dates:

15   The first being on February the 24th, 1995, as set

16   forth in Count I; the second being March the 2nd, 1995,

17   as set forth in Count II; and the third being April the

18   18th, 1995, as set forth in Count III.

19           Now, in the conviction consisting of only one

20   count -- the conviction is for a crime committed on or

21   about Monday, February the 27th, 1995; that is, selling

22   .3 grams of cocaine base, an amount less than .5 grams.

23           Now, Mr. Senter, any challenges to these

24   prior convictions which are not made before the

25   sentence is imposed may not be raised thereafter to

1    attack the sentence.

2         Now, the defendant -- you have through your

3    attorney filed a motion objecting to these prior

4    convictions, but I'm required by statute to inquire of

5    you whether you affirm the prior convictions as

6    previously stated by the Court?

7         THE DEFENDANT:  No, Your Honor.

8         THE COURT:  Any response?

9         THE DEFENDANT:  No, Your Honor.

10         THE COURT:  And, Mr. Poston, we need to

11    proceed then with proof as to the prior convictions in

12    this case.

13         And I understand, Mr. Jennings, that you will

14    have witnesses to testify.

15         MR. JENNINGS:  I do, Your Honor.

16         THE COURT:  If you'd have them please stand

17    at this time and be sworn.

18         THE COURTROOM DEPUTY:  Would you please raise

19    your right hand.

20         Do you solemnly swear or affirm that the

21    testimony you will give in the matter before the Court

22    today will be the truth, the whole truth, and nothing

23    but the truth so help you God.  If so, please say "I

24    do".

25         MS. BANNER:  I do.

1          AGENT MONROE:  I do.

2          THE COURTROOM DEPUTY:  Thank you.  You may be

3    seated.

4          THE COURT:  Thank you.  Mr. Jennings, you may

5    proceed.

6          MR. JENNINGS:  Your Honor, the government's

7    first witness is Blenda Banner.

8          THE COURT:  All right.  Ms. Banner, if you

9    will please come on up and have a seat.

10                    BLENDA BANNER,

11            having been first duly sworn, was

12            examined and testified as follows:

13                  DIRECT EXAMINATION

14    BY MR. JENNINGS:

15    Q    Good afternoon, ma'am.  Would you state and spell

16    your name for the court reporter.

17    A    Blenda Banner, B-l-e-n-d-a, B-a-n-n-e-r.

18    Q    And, ma'am, by whom are you employed?

19    A    The State of Tennessee Board of Probation &

20    Parole.

21    Q    And how long have you been so employed?

22    A    Thirteen years.

23    Q    Ms. Banner, I would take you back to the mid '90s

24    and ask if you were employed on or after November the

25    8th of 1995 as a state probation officer?

1    A    Yes.

2    Q    And in what county were you assigned?

3    A    Hamblen County at that time.

4    Q    All right.  And did there come a time when you

5    undertook the supervision of an individual by the name

6    Toby Tobias Senter?

7    A    Yes.

8    Q    And did you as a result of supervising him create

9    records -- or did the Department of Corrections create

10   records concerning his prior criminal history?

11   A    Yes.

12   Q    And as a result of beginning the supervision of

13   this individual did you meet face-to-face with him on

14   occasion?

15   A    Yes.

16   Q    And in fact did you bring what's -- what there is

17   of your file from back in that time frame concerning

18   the individual named Toby Tobias Senter?

19   A    Yes.

20   Q    Have you compared photographs in that file of the

21   person you supervised to the individual seated here to

22   my left in the tan jumpsuit?

23   A    Yes.

24   Q    And is the person you supervised the defendant,

25   Toby Tobias Senter?

1     A    Yes.

2     Q    And do you know that from having met face-to-face

3    with him on occasion back in that time frame?

4     A    Yes.

5     Q    And do you have records in your file indicating

6    the case number, the relevant identifying data such as

7    Social Security number and date of birth and what he

8    was convicted of and the sentences that he received?

9     A    Yes.

10          MR. JENNINGS:  And, Judge, if I could -- I

11    have not turned the presenter on, but if I could

12    approach the witness just briefly to have her identify

13    some documents.

14          THE COURT:  You may.

15          MR. JENNINGS:  I've shown these to

16    Mr. Poston.

17    BY MR. JENNINGS:

18     Q    Ms. Banner, I'm showing you what I have marked as

19    Government Exhibit 1 Collective.

20          Would you look at the four pieces of paper I've

21    put in front of you, please.

22     A    (Looking.)

23     Q    Do you recognize those documents?

24     A    Yes.

25     Q    Did you review those with me prior to the

1     commencement of this hearing this afternoon?

2     A    Yes.

3     Q    And did you compare some of the matters contained

4     in these documents in Government Collective Exhibit 1

5     to your probation supervision file of the defendant?

6     A    Yes.

7     Q    First of all, did you find the record of a

8     conviction with the case number 95-cr-207?

9     A    Yes.

10    Q    And is that conviction in the name of Toby Senter?

11    A    Yes.

12    Q    And does it reflect the same date of birth on this

13    Judgment on page 1 of Government Collective Exhibit 1

14    as is reflected in your records from your file?

15    A    Yes.

16          MR. JENNINGS:  And, Judge, I'm trying not to

17    put those particulars into the record for privacy

18    reasons but --

19          THE COURT:  Very well.

20          MR. JENNINGS:  -- and that's why I'm being a

21    little vague about this.

22    BY MR. JENNINGS:

23    Q    Do your records also contain Social Security

24    numbers for the defendant?

25    A    Yes.

1    Q     And what does your file show his Social Security

2    number to be?

3    A     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.

4    Q     All right.  With regard to the first page of

5    Government Collective Exhibit 1, is that the same

6    Social Security number with the exception of one digit?

7    A     Yes.

8    Q     And does that appear from looking at the entire

9    Social Security number to just have a mistake in the

10   Social Security number on the --

11          MR. POSTON:  Objection to the leading,

12   calling for an opinion.

13          THE COURT:  Well, it is leading, but, of

14   course, this is not really subject to the rules of

15   evidence.  So I'll allow counsel to continue.

16          You may continue, Mr. Jennings.

17   BY MR. JENNINGS:

18   Q     Okay.  And again with regards to the Judgment in

19   case 95-cr-207, does it indicate that the defendant was

20   convicted of the C felony of Sale of a Schedule

21   II Controlled Substance in Hamblen County, Tennessee?

22   A     Yes.

23   Q     And does it indicate the date of offense of

24   February 27, 1995?

25   A     Yes.

1    Q    And does it indicate that the Judgment was entered

2    on November 8th of 1995?

3    A    Yes.

4    Q    Turning to the next three pages of Government

5    Collective Exhibit 1, again are each of these -- do all

6    three of these concern three counts in the same

7    indictment?

8    A    Yes.

9    Q    And is the case number 95-cr-198?

10    A    Yes.

11    Q    Again does it indicate the defendant on each of

12    these is Toby Senter?

13    A    Yes.

14    Q    And on each of these does it indicate the same

15    date of birth and Social Security number that you've

16    previously identified as being that of the defendant

17    Toby Senter?

18    A    Yes.

19    Q    All right.  With regard to Count I, does the

20    Judgment indicate that the date of the offense is

21    February 24, 1995 --

22    A    Yes.

23    Q    -- in Hamblen County, Tennessee?

24    A    Yes.

25    Q    And was he convicted of a B felony, and does it

1     read Sale of Scheduled II Controlled Substance?

2     A     Yes.

3     Q     And does it indicate the Judgment was entered on

4     November 8, '95?

5     A     Yes.

6     Q     And with regard to --

7           Let's go back real quickly to the first page in

8     95-cr-207.  Does it indicate that he received a

9     three-year sentence on the C felony that we talked

10    about earlier?

11    A     Yes.

12    Q     With regard to Count I of the other case,

13    95-cr-98, does it indicate that he was sentenced in

14    that case to eight years in the Tennessee Department of

15    Corrections?

16    A     Yes.

17    Q     With regard to Count II, again is it the same case

18    number?

19    A     Yes.

20    Q     Again same defendant, same date of birth, and same

21    Social?

22    A     Yes.

23    Q     And does it indicate that he was convicted of a C

24    felony of Sale of Scheduled II Controlled Substance?

25    A     Yes.

1    Q    Does it indicate the date of the offense in that

2    count being March 2, 1995 --

3    A    Yes.

4    Q    -- in Hamblen County, Tennessee?

5    A    Yes.

6    Q    And does it indicate that he was sentenced to

7    three years in the Tennessee Department of Corrections?

8    A    Yes.

9    Q    And again was the Judgment entered on November 8,

10   1995?

11   A    Yes.

12   Q    And finally with regard to Count III, again is

13   this with regard to case number 95-cr-198?

14   A    Yes.

15   Q    And does it indicate the defendant's name is Toby

16   Senter with the same date of birth and Social Security

17   number as the previous three Judgments?

18   A    Yes.

19   Q    And does it indicate that the defendant was

20   convicted of the Class B felony of sale of Schedule

21   II Controlled Substance?

22   A    Yes.

23   Q    And was the offense date April 18, 1995, in

24   Hamblen County, Tennessee?

25   A    Yes.

1    Q    And does the Judgment indicate that he was

2    sentenced to eight years in the Tennessee Department of

3    Corrections?

4    A    Yes.

5    Q    And finally does it indicate that the Judgment was

6    entered on November 8, 1995?

7    A    Yes.

8         MR. JENNINGS:  And, Your Honor, at this time

9    I would offer Government Collective Exhibit 1 into

10   evidence as Collective 1.

11        THE COURT:  It will be received.

12        (Exhibit No. 1 was admitted.)

13        MR. JENNINGS:  Pass the witness for

14   cross-examination.

15        THE COURT:  Okay.  Cross-examination,

16   Mr. Poston.

17        MR. POSTON:  Thank you, Your Honor.

18              CROSS-EXAMINATION

19   BY MR. POSTON:

20   Q    Good afternoon, Ms. Branner -- Right?

21   A    Banner.

22   Q    "Banner".  Sorry.

23        How are you?

24   A    Fine.

25   Q    Good.

1          So you think that you supervised Mr. Senter back

2     almost 20 years ago, right?

3     A     Twelve years.

4     Q     Twelve years?

5     A     Uh-huh.

6     Q     '95 -- Oh, that's why I'm a lawyer.

7          Back then how many people were under your

8     supervision?

9     A     Maybe 70.

10    Q     Seventy.  Do you remember what he looked like then

11    versus now?

12    A     Yes.

13    Q     What did he look like?

14    A     He was thinner, and he didn't have a beard.  I

15    remember him.

16    Q     How many times did you meet with him?

17    A     Not very many because he got in trouble.

18    Q     Okay.  Well, do you recall how many visits?

19    A     No.

20    Q     More than two?  Two or less?

21    A     More than two.

22    Q     More than two, okay, over the one-year period of

23    time or less than that?

24    A     It was less than a year that I supervised him.

25    Q     And Mr. Jennings asked you some questions about

1    the Social Security numbers.  And is it true that they

2    are not identical, that there's a -- they're not the

3    same, right?

4    A    Just on that one count.

5    Q    Okay.  And that's the case 207, correct?

6    A    I think it was 207, yes.

7    Q    Okay.  Two different Social Security numbers --

8    A    Actually the records I've got has both on there

9    -- it has both socials.

10          MR. POSTON:  Thank you.

11                   REDIRECT EXAMINATION

12   BY MR. JENNINGS:

13   Q    All right.  Just one brief question with regard to

14   whether you remember him or not.

15        Did you happen to see an article in a newspaper in

16   2007 concerning this defendant?

17   A    Yes, I did.

18   Q    Was his picture in that newspaper article?

19   A    Probably.  So I don't lie, I don't think I saw a

20   picture at that time.

21   Q    But did it register with you when you read this

22   newspaper article about his arrest in 2007 that it was

23   the guy you had supervised back in the mid '90s?

24   A    Yes.

25          MR. JENNINGS:  Nothing further.

```
1              THE COURT:  Thank you, Mr. Jennings.

2              Anything further, Mr. Poston?

3              MR. POSTON:  No, Your Honor.

4              THE COURT:  You may come down, Ms. Banner.

5              MR. JENNINGS:  May she be permanently

6     excused, Your Honor?  She missed lunch trying to find

7     us today.

8              THE COURT:  Any objection, Mr. Poston?

9              MR. POSTON:  No objection.

10             THE COURT:  You may be excused, Ms. Banner.

11             (The witness was excused.)

12             THE COURT:  Okay.  Do you have any additional

13    evidence?

14             MR. JENNINGS:  Not on this issue, Judge.

15    Agent Monroe's testimony will be on the other

16    objections.

17             (A discussion was held off the record.)

18             THE COURT:  Okay.  Did you want to make a

19    statement?

20             MR. JENNINGS:  I was just asking for a --

21    just two seconds to explain to her how to get back to

22    my office.

23             THE COURT:  Sure.

24             (A discussion was held off the record.)

25             MR. JENNINGS:  Thank you.
```

1          THE COURT:  Okay.  Now, let's continue with

2     the testimony of the agent, please.

3          MR. JENNINGS:  Okay.  Your Honor, this is not

4     on the issue of the prior convictions.  This is on the

5     objections that he's filed to the presentence

6     calculations.

7          THE COURT:  Very well.  Let's proceed.

8          MR. JENNINGS:  Call Special Agent Greg

9     Monroe.

10          THE COURT:  And, for the record, the Court

11     notes that the copies of the prior convictions of the

12     defendant are certified by the Circuit Court clerk for

13     Hamblen County, Tennessee.

14          The certifications demonstrate that the

15     official seal of the county was affixed thereto on 12

16     December, 2008.  Yes.

17          You may continue.

18          MR. JENNINGS:  Thank you.

19               GREG MONROE,

20          having been previously sworn, was

21          examined and testified as follows:

22               DIRECT EXAMINATION

23     BY MR. JENNINGS:

24     Q    State your name and spell it for the court

25     reporter, please.

1    A    It's Greg Monroe, G-r-e-g, M-o-n-r-o-e.

2    Q    And by whom are you employed?

3    A    I'm employed by the Tennessee Bureau of

4    Investigation, assigned to DEA as a Task Force Agent.

5    Q    And how long have you been on the DEA Task Force?

6    A    Since approximately 2001, 2002, I guess.

7    Q    All right.  I want to direct your attention back

8    to the early months of 2007 and ask if you were

9    assigned to the DEA Task Force at that time?

10   A    Yes, I was.

11   Q    And were you the case agent in this case, that is,

12   United States versus Toby Senter -- in the case that

13   went to the trial in this courtroom back in June of

14   2008?

15   A    Yes.

16   Q    And did you sit through that entire trial and did

17   you in fact testify during that trial?

18   A    Yes, I did.

19   Q    And were you the lead agent in charge of the

20   investigation of this defendant and other

21   co-conspirators in late 2006 into 2007?

22   A    Yes.

23   Q    And as the Court has heard, did this eventually

24   become a wiretap investigation?

25   A    It did.

1 Q And were the wiretaps of the defendant's phones

2 essentially between February and early April of '07?

3 A Yes.

4 Q And did it involve a total of four phones I

5 believe?

6 A Yes.

7 Q I want to move you to late in the investigation,

8 that is, toward the end of March and into the first

9 week of April, and ask if you were monitoring the

10 defendant's telephone calls that were subject to the

11 wiretap on a daily basis?

12 A Yes.

13 Q And did there come a time around the 3rd, 4th and

14 5th of April when you were hearing calls that indicated

15 the defendant and other co-conspirators were discussing

16 a trip to Atlanta to buy kilograms of cocaine?

17 A Yes.

18 Q And did there come a time late in that week on

19 Friday in particular where you heard a particular call

20 between the defendant and an individual by the name of

21 Larry Pruitt (phonetic) or Bear?

22 A Yes.

23 Q And do you recall that that telephone conversation

24 that was captured between those two individuals was

25 played during the trial of this case?

1      A      Yes.

2      Q      And would you refresh the Court's memory on the

3      essential content of that call, what was being

4      discussed, and what it led you to do.

5      A      Basically the conversation happened where

6      Mr. Senter had called Bear Pruitt and informed him that

7      he had been robbed of an amount of currency.  And he

8      was trying to find out what happened to his money, and

9      he was trying to borrow more money.

10     Q      All right.  Now, do you remember him claiming that

11     he was down --

12            MR. POSTON:  Your Honor, I think we're

13     leading again.  Objection.

14            THE COURT:  Well, we are.

15            MR. JENNINGS:  I'll rephrase it, Your Honor.

16            THE COURT:  Counsel, let's take a ten-minute

17     recess.  Let me see counsel in chambers for just a

18     moment.  Okay.

19            THE COURTROOM DEPUTY:  All rise.  The Court

20     stands in recess.

21            (A recess was taken.)

22            THE COURTROOM DEPUTY:  All rise.  This Court

23     is again in session with the Honorable Thomas W.

24     Phillips presiding.

25            Please, come to order and be seated.

1          THE COURT:  Okay.  I guess we need to address

2     the question of the enhancements due to the defendant's

3     prior convictions.

4          Mr. Jennings, you may proceed.

5          MR. JENNINGS:  Your Honor, it's the

6     government's position that we have proven beyond any

7     reasonable doubt that the four felony drug convictions

8     contained in Government Collective Exhibit 1 are

9     previous convictions of the defendant Toby Senter.

10         The probation officer stated unequivocally

11    that this is the individual she supervised on those

12    four convictions.

13         It's perfectly clear from those Judgments

14    that those occurred on different dates between February

15    and April of 1995, they were clearly separate and

16    distinct felony drug offenses, and that he is subject

17    to the enhancements under 841(b), having more than --

18    having two or more prior felony drug convictions,

19    having been convicted of a (b)(1)(A) offense; that is,

20    a conspiracy involving more than five kilograms.  The

21    only authorized sentence under the law is one of life.

22         The defendant's attorney has filed a lengthy

23    memorandum urging this Court to not impose that, to

24    analyze the sentencing under the 3553(a) factors and

25    basically arguing that those factors in Booker trump

1    the statutory mandatory minimums, if I can use that

2    word.

3              As I stated in my response to his Sentencing

4    Memorandum, which I filed on March 12th of 2009, I

5    cited to the Court the case of United States v.

6    Higgins, a Sixth Circuit Opinion, which was handed down

7    February 26th of this year.

8              In Higgins, as I said in my memorandum, the

9    Sixth Circuit made once again clear that, along with

10   other circuits in this country, the Sixth Circuit

11   clearly held that 3553(a) factors do not override the

12   penalty provisions of Section 841(b), and the Court

13   does not need to even get to the issue of the

14   reasonableness of a life sentence under 3553(a) or

15   Booker and its progeny, and that the Court has no

16   authority to pose any sentence other than one of life

17   under the evidence in this record.

18             THE COURT:  Thank you, Mr. Jennings.

19             Mr. Poston, your position.

20             MR. POSTON:  Thank you, Your Honor.

21             Your Honor please, in terms of the proof the

22   government put on regarding the prior convictions, two

23   points:  One, we would concede that the current Sixth

24   Circuit authority does allow for the judge and not a

25   jury to make that determination for sentencing

1    purposes.

2         And as the Court knows, in our memorandum we

3    have preserved that issue, should that change, along

4    with the appendere (phonetic) line where a jury would

5    be required to find beyond a reasonable doubt for

6    enhancements, which take a sentence beyond a statutory

7    maximum.  So I think we've preserved the issue.  We

8    have no proof otherwise.

9         And Mr. Jennings has currently stated the law

10   in terms of the prior convictions.

11        Number two, though, we would put out, as we

12   did in the Sentencing Memorandum, which is separate

13   from our legal memorandum -- and that basically says

14   that this defendant, Toby Senter, at the age of 18 has

15   four separate felony drug convictions, that the total

16   drugs was 1.5 grams.

17        And to quantify that, Your Honor, that's

18   about a pencil -- the eraser on the tip of a pencil,

19   1.5 grams, at 18 over a couple-month period of time.

20   And we note that because it will tie in with the other

21   memorandum that we filed in terms of proportionality,

22   due process, all the other things that we cite, that

23   the enhancing prior convictions are what would be in a

24   common day use almost a casual exchange.  We're talking

25   about 20- and 30-dollar purchases.

1    So that's my point on the prior convictions.

2    I'm not going to belabor the Court -- The Memorandum

3    itself is 39 pages, not counting the Sentencing

4    Memorandum.

5        In essence what we're saying -- and

6    Mr. Jennings correctly summarized it -- number one,

7    that when 3553 came into being -- it supersedes the

8    mandatory minimum, and it does because of the language

9    that it put in, that it actually refers to the fact

10   that, notwithstanding other statutes, there is no such

11   language in 841.  And, therefore, they're inconsistent.

12       But Congress knows how to put in language

13   when they want, and we all know that ruling.  And so on

14   that basis we're saying that 3553(a) would trump.

15       Now, it hadn't up until the time that we

16   started to get Booker and all those progeny.  I mean

17   how many years did this Court and all of us stand here

18   and believe that the guidelines were mandatory?  Over

19   two decades.  And then in one swoop of a pen we found

20   out that, no, they weren't.

21       And our point is that we don't believe that

22   841 -- 21 U.S. Code 841 is applicable because Congress

23   superseded it by 18 U.S. Code 3553(a), which then

24   became the overriding way that a Court should sentence.

25   And that is to use the seven factors that determine a

1     punishment that is reasonable but no more lengthy than

2     needs to be.  That would get back to our four-prior-

3     convictions-for-1.5-grams argument.

4           So that's point number one.  It's laid out

5     there.  I'm not going to belabor it.  The Court has

6     read it I'm sure in depth.

7           The other argument -- And then also we have

8     the point that the rule of lenity would require that

9     when it's a tie -- as the Court knows, if there's any

10    doubts and there's conflicting language, then the Court

11    has to rule -- Lenity requires that it then defer to

12    the defendant in its interpretation.

13          The other issues briefly were that the

14    mandatory minimums -- the mandatory life sentences in

15    841 violate both due process and equal protection.  And

16    I've cited the cases that we feel back that up.  They

17    do over punish.  They do negatively affect a rational

18    sentencing system in their application.

19          They also -- The mandatory minimums -- You

20    know, they put in the government's hands entirely too

21    much power as we have seen.  They transferred

22    sentencing power to prosecutors and away from the

23    Courts.  And they have taken away from the Courts, and

24    in direct violation of 3553, the chance for the Court

25    to individualize sentencing based on the seven factors

1       that the Court always looks at to determine what

2       sentence would be fair for a particular person.

3              Based on that, and then the cruel and unusual

4       punishment in terms of a life sentence -- Once again

5       going back to an 18-year-old having a total of four

6       convictions for 1.5 grams, or to put it differently for

7       an eraser's worth of crack, is now facing a life

8       sentence, we feel that certainly falls under a

9       violation of both proportionality and cruel and unusual

10      punishment.

11             So, Your Honor, we would rely on the

12      memorandums we filed with this Court.  I think our

13      Sentencing Memorandum asked the Court to apply 3553.

14      We gave Mr. Senter's background, the discussions on the

15      convictions.  And we feel that a sentence in the range

16      of 15 to 20 years is far more appropriate and is all

17      that is needed, given his conviction for the five

18      kilos.

19             My final point, by the way, is in terms -- I

20      do not withdraw but we have on record that in the

21      Presentence Report there are two more objections.  One

22      is to the use of the two level enhancement for a gun.

23      That's something separate.  And the other is the

24      application of the so-called murder statute in terms of

25      the sentencing guidelines.

1          I think the Court is facing the issue of

2     mandatory minimums under the law, but I'd just point

3     out to the Court that if we ever had to get to that, we

4     are objecting to those two things.

5          THE COURT:  Thank you, Mr. Poston.

6          Mr. Jennings.

7          MR. JENNINGS:  Just very briefly, Your Honor.

8          I believe that I thoroughly addressed the

9     other arguments Mr. Poston made of disportionality,

10    equal protection, violation of due process, cruel and

11    unusual punishment.  I set forth the cases that

12    discount those arguments.

13         And I fully understand what Mr. Poston wants

14    the law to be, but Higgins is a very recent

15    reaffirmation of what the law is.  And all the

16    government is doing is asking the Court to follow the

17    law.

18         And I will agree with Mr. Poston -- Well, I

19    will say in response to the last remark he made that if

20    the Court does in fact impose the mandatory minimum

21    sentence of life, then obviously the two objections

22    that he's preserved in his pleadings are basically

23    moot.

24         THE COURT:  Thank you, Mr. Jennings.

25         Well, counsel, first of all, let me

1    compliment you on your excellent briefs that you have

2    filed on this issue. Anyone wanting to understand the

3    controversy over mandatory minimum sentences would be

4    well-advised to read the briefs that you have filed

5    because you have covered all of the bases.

6        And I think that you have done an excellent

7    job with analyzing the conflicting positions of the two

8    opposite camps.

9        But the fact of the matter is this Court is a

10   part of the Sixth Circuit Court of Appeals, and the

11   Sixth Circuit Court of Appeals has made it very clear

12   first in United States versus Branch and then again in

13   United States versus Higgins that neither Booker nor

14   Kimbrough altered the validity of the minimum mandatory

15   sentencing provisions in section 841(b) or the

16   exceptions to those provisions found in 18 United

17   States Code Section 3553(f).

18       The end result of all of that is the law of

19   the land in the Sixth Circuit at this point is that

20   Congress did not change the law in establishing the

21   seven factors under 3553(a), and mandatory minimums as

22   established by Congress still control.

23       Therefore, this Court has no discretion but

24   to provide that the mandatory minimum be enforced in

25   this case, assuming that the government has indeed

1    complied with its requirements and with its obligations

2    under the law.

3        In that regard the Court finds that the

4    government has provided proper notice of prior

5    convictions pursuant to 21 United States Code, Section

6    851(a).

7        The prior felony drug convictions noticed by

8    the government are valid and have been proven by

9    certified copies of the Judgments as well as the

10   testimony of the defendant's prior probation officer

11   with the State of Tennessee, Blenda Banner.

12       Moreover, the Court finds that the penalties

13   under 21 United States Code, Section 841(b)(1)(a), are

14   Constitutional and binding on the Court.

15       And, of course, the most recent decision of

16   the United States Court of Appeals for the Sixth

17   Circuit in United States versus Higgins decided this

18   year -- Branch was decided in 2008.  Higgins reaffirms

19   Branch in 2009 and established that the statutory

20   minimums -- mandatory minimums were not affected by

21   Booker or Kimbrough or by the decision of the Supreme

22   Court in those Supreme Court decisions to apply the

23   3553(a) factors in setting sentences in District

24   Courts.

25       Accordingly, the defendant's motion objecting

1    to the government's application for enhanced penalties

2    is denied.

3              The Court has, therefore, determined that the

4    defendant is subject to increased punishment by reason

5    of prior convictions; namely, a mandatory minimum life

6    sentence under 21 United States Code,

7    Section 841(b)(1)(A).  And the Court will, therefore,

8    proceed to sentencing thereunder as required by 21

9    United States Code, Section 851(d).

10             Now, Mr. Jennings, you indicated that the

11   government's position in regard to the other objections

12   to the Presentence Investigation Report contained in

13   paragraphs 22 and 23 are now moot.  Is that correct?

14             MR. JENNINGS:  That is correct, Your Honor.

15             And obviously I will state for the record

16   that we expect were this case ever to be remanded for

17   resentencing that we could revisit those issues.

18             But I do believe under the Court's stated

19   position they are moot and would not be worthy of the

20   Court's time to rule upon at this time.

21             THE COURT:  Mr. Poston, the record will be

22   clear that your objections to paragraphs 22 and 23 will

23   be maintained for the record in this case.

24             MR. POSTON:  Thank you, Your Honor.

25             THE COURT:  Now, pursuant to the Court's

1    determination as to the prior convictions and the

2    government's decision that the other factors are moot,

3    it is the finding of the Court that the defendant's

4    basic offense level at this point is 36.

5         There is a two-point enhancement for

6    obstruction of justice, which will equal an offense

7    level in this case of 38, and the defendant's criminal

8    history category is Roman numeral V.

9         Now, Mr. Poston, would you like to make any

10   additional remarks on behalf of the defendant before I

11   set his sentence in this case?

12        MR. POSTON:  Actually, Your Honor, yes.

13        One, we would ask the Court to recommend FCIs

14   at either Lexington or Manchester, if applicable; or if

15   not, then the nearest FCI to this area.

16        And, secondly, to explain to the Court that

17   given the nature of this case and the sentence,

18   Mr. Senter would thank the Court, and even the

19   government, for its conduct during this trial.  I mean

20   he appreciated having his trial.

21        But given the fact that, you know, we will be

22   appealing this and he has a state charge still pending,

23   I've advised him, and he's agreed, that this would not

24   be the appropriate time for him to elocute or address

25   the Court.

1          THE COURT:  Very well, Mr. Poston.  I

2     appreciate your assistance to the Court, and I

3     understand the defendant's position in that regard.

4          Mr. Jennings, anything --

5          Well, first of all, I need to ask,

6     Mr. Senter --

7          That is correct, Mr. Senter?  You do not wish

8     to make a statement to the Court at this time?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Thank you, Mr. Senter.

11         Mr. Jennings, do you wish to make any

12    comments on behalf of the government?

13         MR. JENNINGS:  I do not.

14         THE COURT:  Thank you, Mr. Jennings.

15         Counsel, we'll take a brief recess and we'll

16    reconvene in about ten minutes.

17         THE COURTROOM DEPUTY:  All rise.  This

18    Honorable Court stands in recess.

19         (A recess was taken.)

20         THE COURTROOM DEPUTY:  All rise.  This Court

21    is again in session with Honorable Thomas W. Phillips

22    presiding.

23         Please, come to order and be seated.

24         THE COURT:  Counsel, I would at this time

25    state the sentence, but I'll give you an opportunity to

1    file your objections to the sentence before it's

2    actually imposed in this case.

3         The Court has considered the nature and

4    circumstances of the offense, the history and

5    characteristics of the defendant, and the Advisory

6    Guidelines ranges as well as the other factors listed

7    in Title 18 United States Code, Section 3553(a), and

8    also the requirements set forth in 21 United States

9    Code, Section 841(b)(1)(a).

10        Pursuant to the Sentencing Reform Act of

11   1984, it is the Judgment of the Court that the

12   defendant is hereby committed to the custody of the

13   Bureau of Prisons for a term of imprisonment of life.

14        This is the mandatory term of imprisonment

15   required by the statute.  It is felt that this sentence

16   will afford adequate deterrence and provide just

17   punishment.

18        The Court will recommend that the defendant

19   receive 500 hours of substance abuse treatment and

20   training as a part of the Bureau of Prison's

21   Institution Residential Drug Abuse Treatment Program.

22        Should the defendant be released, he shall be

23   placed on supervised release for a term of ten years.

24        Within 72 hours of release from the custody

25   of the Bureau of Prisons the defendant shall report in

1　　person to the probation office in the district to which

2　　he has been released.

3　　　　　While on supervised release the defendant

4　　shall not commit another federal, state or local crime,

5　　shall comply with the standard conditions that have

6　　been adopted by this Court and Local Rule 8310, and

7　　shall not illegally possess a controlled substance.

8　　　　　The defendant shall not possess a firearm,

9　　destructive device, or any other dangerous weapon.

10　　　　　The defendant shall cooperate in the

11　　collection of DNA as directed by his probation officer.

12　　　　　In addition, the defendant shall comply with

13　　the following special conditions:  The defendant shall

14　　participate in a program of testing and/or treatment

15　　for drug and/or alcohol abuse as directed by his

16　　probation officer until such time as he has been

17　　released from the program by the probation officer.

18　　　　　Title 18 United States Code Sections 3565(b)

19　　and 3583(g) require mandatory revocation of supervised

20　　release for possession of a controlled substance or a

21　　firearm or for refusal to comply with drug testing.

22　　　　　Pursuant to Title 18 United States Code

23　　Section 3013 the defendant must pay a Special

24　　Assessment Fee in the amount of $100, which shall be

25　　due immediately.

1            The Court finds that the defendant does not

2     have the ability to pay a fine in this case, and the

3     Court will accordingly waive the fine in this matter.

4            It is further ordered that the defendant be

5     remanded to the custody of the Attorney General pending

6     designation by the Bureau of Prisons.

7            And the Court will recommend that the

8     defendant be placed in the Bureau of Prison's facility

9     located in Manchester or Lexington, Kentucky.

10           Mr. Poston, I will give you an opportunity to

11    state your objections to the sentence for the record.

12           MR. POSTON:  Your Honor please, as contained

13    in our briefs and prior discussions, we feel that the

14    Court does not have to impose the mandatory life

15    sentence under 3553(a).

16           THE COURT:  Thank you, Mr. Poston.

17           Mr. Jennings, does the government have any

18    objection to the sentence as previously read and stated

19    by the Court?

20           MR. JENNINGS:  No, Your Honor.

21           THE COURT:  Very well.  Then the sentence

22    shall be imposed as previously read and stated by the

23    Court.

24           The Court finds that a sentence of life in

25    this case is sufficient but not greater than necessary

1     to comply with the purposes of Section 3553(a) as well

2     as the requirements of 21 United States Code Section

3     841(b)(1)(a).

4           The Court has considered the nature and

5     circumstances of the offense as well as the history and

6     characteristics of the defendant.

7           The instant offense involved the distribution

8     of multiple kilograms of cocaine into the East

9     Tennessee area.

10          With regard to the defendant's history and

11    characteristics, the defendant has a lengthy criminal

12    history beginning at the age of 16.  This criminal

13    history includes multiple felony drug convictions and

14    assault arrests.

15          The Court has previously determined that the

16    prior felony drug convictions noticed by the government

17    are valid and accordingly the Court has imposed the

18    statutory penalty under 21 United States Code Section

19    841(b)(1)(a).

20          However, the Court is concerned about the

21    defendant's extensive history of substance abuse.  And

22    the Court has recommended to the Bureau of Prisons that

23    the defendant receive the 500-hour substance abuse

24    treatment program that is provided by the Bureau of

25    Prisons.

1     Finally, while the defendant has obtained his

2  GED, he has no training other than his educational

3  experience which resulted in his GED.  And the Court

4  will hope the defendant will take advantage of the many

5  opportunities that he will have while with the Bureau

6  of Prisons to further his education and to obtain

7  vocational training.

8     In sum the Court finds that the sentence

9  imposed is sufficient but not greater than necessary to

10  comply with the purposes of 18 United States Code

11  Section 3553(a) and 21 United States Code Section

12  841(b)(1)(a) and to protect the public from further

13  crimes of the defendant.

14     Now, Mr. Senter, you can appeal your

15  conviction if you believe that your conviction was

16  somehow unlawful or if there is some fundamental defect

17  in the proceedings that was not waived by your guilty

18  plea.

19     You also have a statutory right to appeal

20  your sentence, particularly if you think the sentence

21  is contrary to law.

22     Mr. Senter, you also have the right to apply

23  for leave to appeal in what is called in forma

24  pauperis; that is, without paying any court costs prior

25  to filing your appeal.

1            If you request, the Clerk of this Court can

2       prepare and file a Notice of Appeal on your behalf.

3            In addition, Mr. Senter, with very few

4       exceptions any Notice of Appeal must be filed within

5       ten days of the entry of the Judgment in this case.

6            A Judgment of Conviction shall be promptly

7       prepared in the form prescribed for Judgments,

8       including sentences, under the Sentencing Reform Act.

9            Copies of the charging documents, Presentence

10      Report, and Judgment of Conviction will be sent to the

11      United States Sentencing Commission as expeditiously as

12      possible.

13           Anything further we need to take up at this

14      time on behalf of the defendant, Mr. Poston?

15           MR. POSTON:  No, Your Honor.

16           THE COURT:  Anything further, Mr. Jennings,

17      on behalf of the government?

18           MR. JENNINGS:  No, Your Honor.

19           THE COURT:  We will stand adjourned.

20           THE COURTROOM DEPUTY:  All rise.  This

21      Honorable Court stands adjourned.

22           (End of Proceedings.)

23

24

25

1  REPORTER'S CERTIFICATE

2  STATE OF TENNESSEE       )

3  COUNTY OF ANDERSON       )

4          I, Lynda L. Clark, Court Reporter and Notary

5  Public, in and for the County of Anderson, State of

6  Tennessee at large, do hereby certify:

7          That I reported stenographically the proceedings

8  held in open court on April 30, 2009, IN THE MATTER OF

9  UNITED STATES OF AMERICA VS. TOBY TOBIAS SENTER; that

10  said proceedings in connection with the hearing were

11  reduced to typewritten form; and that the foregoing

12  transcript is a true and accurate record of said

13  proceedings to the best of my knowledge, skills and

14  ability.

15          I further certify that I am not kin to any of

16  the parties involved therein, nor their counsel, and I

17  have no financial or otherwise interest in the outcome

18  of these proceedings whatsoever.

19          This the 5th day of October, 2009.

20

21  _____

22  COURT REPORTER & NOTARY PUBLIC

23  My Commission Expires:  08/24/11.

24

25

26